Statement of the Case.
MONKOE, C. J.
Plaintiff brings up this appeal from a judgment dismissing the suit upon an exception of no cause of action.
It appears that he obtained an injunction restraining defendant from drilling a gas well, under a certain oil and gas lease, and now prays that the injunction be perpetuated, and the lease decreed to have terminated.
The lease is made part of the petition, and contains, among others, the following provisions and stipulations, to wit:
For $1,260, paid in cash, and certain other considerations, it demises, lets, and leases, for the purpose of exploiting the same for the production of minerals therefrom, and also grants and conveys to defendant all of the oil, gas, and other minerals in and under some 630 acres of land, with the exclusive right to drill thereon for oil.or gas, as also the right of way for pipe lines, etc. It declares that, unless defendants begin the drilling of a well for oil or gas within one year, the contract shall become void; that, after it shall have commenced such well, it shall have the right to make as many attempts to find oil or gas as it pleases; provided, that each succeeding attempt shall be begun not more than 60 days after the cessation or abandonment of work in the attempt which preceded; and, provided, further, that, in the event that, after bringing in a well producing oil or gas, defendant does not drill other wells, as thus stipulated, it shall hold only the 10 acres around the well so brought in, and the rest of the land shall be released from the contract; that, if oil be found in paying quantities, defendant shaE deliver a certain proportion thereof to the lessor; if gas is produced in paying quantities and is marketed off the premises, a certain proportion of the gross proceeds shall be paid to the lessor.
“The lessor takes notice, however, of the fact that, at the present time, there is no market for such gas, and the lessee is not under obligation to drill wells for that purpose. If, however, the lessee should choose to drib such wells and market same off the premises, then it shaE become liable for such royalty,” etc. “ * * * It is expressly declared that, if oil or gas, or other minerals * * * be found in paying quantities, then the Atlas OE Company shall become, at once, vested with an estate in and to all of the minerals underlying said land, with right to produce the same, and any and aU of the same, so long as any one of said minerals can be produced in paying quantities.”
And there are other provisions which are not material to the issue here presented.
The petition, after alleging the stipulations above recited, further alleges that defendant drilled a shallow gas well within the year, then a second shallow gas well, then a deep gas well, then a deep gas well in search of oil, but that it has begun no oil well within 60 days since the completion of the last well; that there is no demand for gas in the vicinity of the land, and that the drilling of additional gas wells wEl be of no advantage' to either plaintiff or defendant, but that defendant has erected a derrick and is about to drill another such well, .contrary to the interest and wishes of both parties, as shown by its letters, annexed to the petition; that the drilling of such well, besides being of no advantage, will interfere with the cultivation of the land and endanger the gas supply, thus causing petitioner irreparable injury; that the lease shows on its face that its purpose was the driEing for oil, and that gas was merely incidental; that it imposes no obligation to drill for gas, and there is no market for gas; that the beginning of a gas weE -within 60 days from the completion *1051 of the last well would therefore be no compliance with the contract, and its drilling serve no useful purpose; that. defendant, having ceased to drill for oil, and'there being' no market for gas, is without right to drill for gas and should be restrained from so doing; that it is not operating any of the gas wells which have been drilled, is marketing no gas therefrom, and is without right to hold any land surrounding said wells; prays that the injunction be perpetuated, the lease decreed .to have terminated, in toto, and the lánd to be freed therefrom.
From defendant’s letters, annexed to the petition, we make the following excerpts, to wit:
From letter of April 16, 1917, one week prior to the institution of the suit:
“Within one year, we began such operations and drilled a shallow gas well. Since completing that well we have completed a second very large shallow gas- well; we have drilled a third well which is a deep gas well; and we have drilled a fourth well to a depth of 2,885 feet, at a very great expense to ourselves and without any possibility of any return from this latter well. This well was drilled in the most careful manner possible; every strata of sand through which we passed was carefully tested, and, notwithstanding that we could have completed, in any one of three known sands, a very large gas well, we drilled on to the very good depth mentioned so as to test the land in the most complete- manner possible for oil. We have expended on this lease, to date, a total of $33,809.58. We. have tested the land. * * * We have demonstrated that it is a valuable gas property. As you know, however, until we began to create a market, there was no sufficient market for natural gas from, that field. In the creation of a market for this gas, we are spending more than $150,000 in the constimction of a pipe line, and we have spent more than a half million dollars in the acquisition of markets, and we will continue to, spend many thousands of dollars until an ample market is provided.
“The drilling of gas wells on your property, at this time, cannot possibly be of any benefit -to you. It is contrary to the best judgment of all gas operators. Tour gas wiil be much better conserved in nature’s reservoir, without being tapped with a large number of- openings, than it could possibly be if drilled promiscuously. We are ready now to start a fifth well on this property, and will do so, without any further delay, if you insist upon our doing it. * * *
“All the drilling, to date, has proven that it is quite improbable that any oil will ever be found on this property; and I firmly believe that it is a gas field only. I am writing therefore to ask you what your wishes on this matter are. If you say to drill the fifth well, we shall begin immediately. I hope, however, that you will be able to look at this matter differently, and that you will be willing to allow, drilling operations to stand until such time as a gas market is provided. We are hastening this time just as fast as it is humanly possible.”
On the same day (April 16, 1917) defendant notified plaintiff that it had begun operations for the drilling of the fifth well, and' proposed to make it a shallow well.
Opinion.
Plaintiff seeks to prohibit defendant from drilling a gas well, and, having done so, to obtain a judgment decreeing the contract to have terminated by reason of its failure to drill a well in compliance therewith. But, as we interpret the contract, it contemplates the beginning of a well, for oil or gas, within 60 days from the cessation or abandonment of work upon the last preceding well, and leaves it optional with defendant to begin either an oil or a gas well. If it appeared that defendant had made no attempt to find oil, and had no intention to make such attempt, a different case would be presented; but, even then, it is possible that a sufficient reason might be found for the adoption of that course; just as, in our opinion, the reason now assigned for drilling a gas instead of an oil well is sufficient, if plaintiff insists that a well be drilled, since it is the defendant, not plaintiff, upon whom primarily the right is conferred to determine whether the well required to be drilled shall be for oil or gas; and in that connection it may be remarked 'that, though the *1053 lease here in question “grants and conveys” to defendant “all of the oil, gas and other minerals,” etc., the requirements in regard to the drilling invariably refer to “oil or gas.” Thus the “second” paragraph of the lease reads:
“After the said Atlas Oil Company shall have commenced a well,- as stipulated in paragraph 1, then it shall have the right to make as many attempts to find oil or gas as it pleases; provided, only, that such attempts shall. be successive, in the sense that, until oil or gas be found, not more than 60 days shall elapse between the cessation or abandonment of work on one well and the beginning of work on another; provided that, in the event a well is drilled on said property, as stipulated in paragraph one, producing either oil or gas [and] the said Atlas Oil Company does not exercise its option to drill additional wells, as stipulated herein, then, and in that event, it shall only hold 10 acres around the well so drilled, releasing the remainder of the property herein leased from the operation of said contract.”
Laws are not to be so construed as to lead to absurd conclusions, and neither are contracts, and it might very well happen, under a lease requiring the successive drilling of wells, and containing no provision for the holding of land around those that were completed, that the courts would hold that nofurther drilling could be required; for, to state an extreme case, there is a limit to the number of wells that can be drilled within a given acreage; and, again, there is a limit beyond which the drilling of another well would be a mere waste of money and labor, without possible advantage to either owner or lessee; and it is not often that a contract will be held to intend a result of that character; but, where, as in this instance, the lessor seeks to prevent the drilling, and at the same time to terminate the contract, because of the failure of the lessee to drill, and the lessee insists upon his right to drill, merely to prevent the avoidance of the contract, there seems to be nothing for the court to do save to allow the contract to be executed according to its terms, since we are not authorized to frame another. The counsel for defendant have thought proper to say in their brief:
“For the court to annul the lease, at this time, and take from the defendant the four gas wells which it has drilled on plaintiff property, and cause it to lose the $150,000 that it has already expended in the construction of the pipe line in an effort to market the gas, would be judicial outrage.”
Our comment upon that language is that we reach our conclusions in cases submitted to us by exercising our best judgment in determining the questions of law and fact presented, and are much aided by the intelligent argument of counsel, but that it contributes nothing to our efforts to be informed that a particular judgment, if rendered, will be a judicial outrage.
The judgment appealed from is affirmed.